## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CIVIL ACTION NO. 0:25-CV-61308-KMM

SHAWN SILVER,

                    Plaintiff,

      v.

SPILL THE TEA, INC., a Delaware
corporation, AWDTSG, Inc., a Delaware
corporation, TRANSGLOBAL ASSETS INC.,
a Wyoming corporation, jointly and severally
d/b/a DATEGUARD ARE WE DATING THE
SAME GUY? – NASHVILLE, and META
PLATFORMS, INC., a Delaware corporation,

                  Defendants.

## META PLATFORM INC.'S
## MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION,
## IMPROPER VENUE, AND FAILURE TO STATE A CLAIM
## AND MEMORANDUM OF LAW IN SUPPORT THEREOF

# TABLE OF CONTENTS

I.     INTRODUCTION ............................................................................................... 1

II.    FACTUAL BACKGROUND .............................................................................. 2

III.   ARGUMENT ...................................................................................................... 3

    A.    The Complaint Should Be Dismissed for Lack of Personal Jurisdiction. ................. 3

        1.    Meta is not subject to general personal jurisdiction in Florida. ............................ 4

        2.    Meta is not subject to specific personal jurisdiction in Florida. ........................... 5

    B.    Venue In This Court Is Improper. ............................................................. 8

    C.    Plaintiff's Complaint Fails to State a Claim Against Meta. ..................................... 11

        1.    Plaintiff's right of publicity claim against Meta fails as a matter of law. .......... 11

        2.    Plaintiff cannot state a claim for injunctive relief from Meta. ........................... 13

    D.    Section 230 Independently Bars Plaintiff's Claims. ..................................... 15

        1.    Meta is an interactive computer service provider. ............................................. 15

        2.    The content was provided by another information content provider. ................. 16

        3.    Plaintiff's claims seek to treat Meta as a "publisher." ......................................... 17

    E.    Plaintiff Should Not Be Granted Leave to Amend. ................................................ 20

IV.    CONCLUSION.................................................................................................. 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alabama v. U.S. Army Corps of Eng'rs,*
  424 F.3d 1117 (11th Cir. 2005) ............................................................................14

*Anderson v. Coupons in the News,*
  No. 20-13677, 2021 WL 6098420 (11th Cir. Dec. 21, 2021)................................13

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009)..............................................................................................11

*Blue Water Innovations, LLC v. Fettig,*
  No. 18-60671-CIV, 2019 WL 1904589 (S.D. Fla. Mar. 8, 2019) .........................14

*BPI Sports, LLC v. PHD Fitness LLC,*
  No. 14-60069-CIV, 2014 WL 11706458 (S.D. Fla. June 13, 2014)........................8

*Burciaga v. Gold Club Tampa, Inc.,*
  No. 16-cv-790-T-27JSS, 2016 WL 9526567 (M.D. Fla. Dec. 28, 2016) ...............20

*Caraccioli v. Facebook, Inc.,*
  700 Fed. App'x 588 (9th Cir. 2017) .....................................................................16

*Carmouche v. Tamborlee Mgmt., Inc.,*
  789 F.3d 1201 (11th Cir. 2015) ..............................................................................5

*Cohen v. Facebook, Inc.,*
  252 F. Supp. 3d 140 (E.D.N.Y. 2017), *aff'd in part*, *Force*, 934 F.3d ..................18

*Consol. Dev. Corp. v. Sherritt, Inc.,*
  216 F.3d 1286 (11th Cir. 2000) ..............................................................................3

*Cross v. Facebook, Inc.,*
  14 Cal. App. 5th 190 (2017) ................................................................................16

*Czyz v. Zuckerberg,*
  No. 502024CA000996XXXAMB (Fla. Cir. Ct., 15th Jud. Cir., Mar. 21,
  2025), Order Granting Defendants' Motion to Dismiss ......................................17

*Daimler AG v. Bauman,*
  571 U.S. 117 (2014)................................................................................................4

*Doe (K.B.) v. Backpage.com, LLC*,
   724 F. Supp. 3d 882 (N.D. Cal. 2024) ...................................................................19

*Doe v. Am. Online, Inc.*,
   783 So. 2d 1010 (Fla. 2001)...................................................................................15

*Doe v. Kik Interactive, Inc.*,
   482 F. Supp. 3d 1242 ............................................................................................20

*Dowbenko v. Google Inc.*,
   582 Fed. App'x 801 (11th Cir. 2014) ..............................................................16, 18

*Dyroff v. Ultimate Software Group, Inc.*,
   934 F.3d 1093 (9th Cir. 2019) ..............................................................................19

*Estes v. Rodin*,
   259 So. 3d 183 (Fla. Dist. Ct. App. 2018) .............................................................7

*Facebook, LLC v. Grind Hard Holdings, LLC*,
   390 So. 3d 142 (Fla. Dist. Ct. App. 2024) .............................................................6

*Fletcher v. Facebook, Inc.*,
   No. 24-cv-01384, 2025 WL 714238 (D.S.C. Feb. 13, 2025)...........................10, 11

*Florida Beauty Flora Inc. v. Pro Intermodal L.L.C.*,
   No. 20-cv-20966, 2021 WL 1945821 (S.D. Fla. May 14, 2021)...........................14

*Force v. Facebook, Inc.*,
   934 F.3d 53 (2d Cir. 2019)....................................................................................17

*Fuentes v. Mega Media Holdings, Inc.*,
   721 F. Supp. 2d 1255 (S.D. Fla. 2010) .................................................................13

*Gannett Co. v. Anderson*,
   947 So. 2d 1 (Fla. Dist. Ct. App. 2006) ................................................................20

*Garrett-Alfred v. Facebook, Inc.*,
   540 F. Supp. 3d 1129 (M.D. Fla. 2021) ..............................................................5, 6

*Giordano v. Romeo*,
   76 So. 3d 1100 (Fla. 3d DCA 2011) .....................................................................15

*Godwin v. CPF River Oaks Austin, L.L.C.*,
   No. 23-CV-1566-DII, 2024 WL 2732670 (W.D. Tex. May 28, 2024), *appeal*
   *dismissed*, No. 24-50531, 2024 WL 5277355 (5th Cir. July 30, 2024)....................5

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
   564 U.S. 915 (2011)...............................................................................................4

*Gullen v. Facebook.com, Inc.*,
    No. 15 C 7681, 2016 WL 245910 (N.D. Ill. Jan. 21, 2016) ....................................................7

*Hall v. United Ins. Co. of Am.*,
    367 F.3d 1255 (11th Cir.2004) .............................................................................................20

*Harrison v. Facebook, Inc.*,
    No. CV 18-0147, 2019 WL 1090779 (S.D. Ala. Jan. 17, 2019).........................................6, 7

*Hepp v. Facebook*,
    14 F.4th 204 (3d Cir. 2021) ..................................................................................................19

*Island Sky Corp. v. Hertz*,
    No. 19-61551-CIV, 2020 WL 13261141 (S.D. Fla. Feb. 11, 2020) .......................................10

*Jenkins Brick Co. v. Bremer*,
    321 F.3d 1366 (11th Cir. 2003) ..............................................................................................9

*Kidstar v. Facebook, Inc.*,
    No. 18-cv-13558, 2020 WL 4382279 (D.N.J. July 31, 2020) .................................................11

*Kimzey v. Yelp! Inc.*,
    836 F.3d 1263 (9th Cir. 2016) ...............................................................................................20

*Kinney v. Mindsize, LLC*,
    No. 20-62094-CIV, 2021 WL 3911859 (S.D. Fla. June 7, 2021)............................................3

*Klayman v. Zuckerberg*,
    753 F.3d 1354 (D.C. Cir. 2014) ......................................................................................15, 18

*Lane v. MRA Holdings, LLC*,
    242 F. Supp. 2d 1205 (M.D. Fla. 2002)............................................................................12, 13

*Lima v. Intermarine Invs., LLC*,
    No. 21-cv-20702, 2021 WL 7542980 (S.D. Fla. July 31, 2021) ............................................14

*Loomer v. Facebook, Inc.*,
    No. 19-CV-80893, 2020 WL 2926357 (S.D. Fla. Apr. 13, 2020) ..........................................11

*Loomer v. Zuckerberg*,
    No. 22-cv-02646, 2023 WL 6464133 (N.D. Cal. Sept. 30, 2023)..........................................16

*Lynch v. Bailey-Roka*,
    No. 22-cv-14338, 2023 WL 4144365 (S.D. Fla. June 23, 2023).............................................10

*M.P. by and through Pinckney v. Meta Platforms, Inc.*,
    127 F.4th 516 (4th Cir. 2025), *cert. pending*, No. 24-1133 (filed May 2, 2025)....................19

*Madara v. Hall*,
    916 F.2d 1510 (11th Cir. 1990) ......................................................................................4

*Medytox Sols., Inc. v. Investorshub.com, Inc.*,
    152 So. 3d 727 (Fla. 4th DCA 2014) ...................................................................15, 17, 18

*Mezey v. Twitter, Inc.*,
    No. 18-cv-21069, 2018 WL 5306769 (S.D. Fla. July 19, 2018) ....................................16, 17

*Montano v. Wash. State Dep't of Health*,
    No. 23-23903, 2024 WL 3029155 (S.D. Fla. May 28, 2024)..................................................18

*Nat'l Football League v. Alley, Inc.*,
    624 F. Supp. 6 (S.D. Fla. 1983) ........................................................................................12

*Noshirvan v. Couture*,
    No.23-cv-1218, 2025 WL 1769669 (M.D. Fla. June 26, 2025) ...........................................13

*Nunes v. Cable News Network, Inc.*,
    No. 22-CV-2659, 2023 WL 2468646 (M.D. Fla. Mar. 1, 2023) .............................................7

*of Doe v. Grindr, LLC*,
    No. 23-CV-193, 2023 WL 7053471 (M.D. Fla. Oct. 26, 2023) ...........................................16

*Patterson v. Meta Platforms, Inc.*,
    --- N.Y.S.3d ---, 2025 WL 2092260 (N.Y. App. Div. July 25, 2025) ...................................19

*Perfect 10, Inc. v. CCBill LLC*,
    488 F.3d 1102 (9th Cir. 2007) ..........................................................................................19

*Petersen v. Meta, Inc.*,
    No. 24-cv-00038, 2024 WL 4719714 (S.D. Tex. Sept. 4, 2024).........................................10

*Pro. Plaza Condo Ass'n, Inc. v. Landmark Infrastructure Holding Co.*,
    No. 20-20707-CIV, 2020 WL 13389813 (S.D. Fla. Oct. 29, 2020) .....................................14

*Reaud v. Facebook, Inc.*,
    No. 23-cv-06329, 2024 WL 4126066 (N.D. Cal. Sept. 9, 2024)..........................................18

*Ripple Labs Inc. v. YouTube LLC*,
    No. 20-cv-02747, 2020 WL 6822891 (N.D. Cal. Nov. 20, 2020) .........................................16

*Roca Labs, Inc. v. Consumer Op. Corp.*,
    140 F. Supp. 3d 1311 (M.D. Fla. 2015)...........................................................................15, 17

*Romero v. Meta Platforms, Inc.*,
No. 23-CV-3306, 2024 WL 3466403 (D.S.C. July 19, 2024), *aff'd*, No. 24-1729, 2024 WL 5200156 (4th Cir. Dec. 23, 2024), *cert. denied*, 145 S. Ct. 1972 (2025) .................................................................................5, 21

*Russell v. Meta Platforms, Inc.*,
No. 23-CV-193, 2024 WL 4800365 (N.D. Miss. May 29, 2024).........................5, 7

*Snow v. DirecTV, Inc.*,
450 F.3d 1314 (11th Cir. 2006) ...........................................................6

*Sovereign Offshore Servs., LLC v. Shames*,
No. 17-CV-80172, 2017 WL 7798664 (S.D. Fla. Aug. 3, 2017) ...........................7

*In re Takata Airbag Prods. Liab. Litig.*,
396 F. Supp. 3d 1101 (S.D. Fla. 2019) .....................................................6

*Taylor v. Trapeze Mgmt., LLC*,
No. 17-cv-62262, 2019 WL 1468515 (S.D. Fla. Feb. 27, 2019) ...........................12

*Trump v. Simon & Schuster, Inc.*,
No. 23-cv-2333, 2023 WL 5000572 (N.D. Fla. Aug. 4, 2023)............................10

*Tyne v. Time Warner Ent. Co.*,
901 So.2d 802 (Fla. 2005)...............................................................12

*United Techs. Corp. v. Mazer*,
556 F.3d 1260 (11th Cir. 2009) ...........................................................3

*Walden v. Fiore*,
571 U.S. 277 (2014).......................................................................6

*World-Wide Volkswagen Corp. v. Woodson*,
444 U.S. 286 (1980)......................................................................5

## Statutes

28 U.S.C. § 1391 .......................................................................8, 10

28 U.S.C. § 1406(a) .......................................................................10

47 U.S.C. § 230(c)(1)............................................................. *passim*

Fla. Stat. § 48.193 .....................................................................4, 5

Fla. Stat. § 540.08 .............................................................11, 12, 13, 20

## I.      INTRODUCTION

Plaintiff Shawn Silver ("Plaintiff"), who purports to be a Tennessee resident, seeks to hold Defendant Meta Platforms, Inc. ("Meta")—a Delaware company with its principal place of business in California—liable in *Florida* for the alleged conduct of individuals associated with a Facebook Group called "DateGuard Are We Dating the Same Guy? – Nashville." Plaintiff claims the individuals copied photos of him from a private dating platform and republished them within the Facebook Group. As to Meta, Plaintiff alleges that it "hosted and promoted" his "identifiable photograph" and failed to "remove, flag, or suppress" the use of his photograph on Facebook. Plaintiff's Complaint fails in its entirety for several reasons as to Meta, and Meta should be dismissed from this case, *with prejudice.*

***First***, dismissal is warranted pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. Because Meta is incorporated in Delaware and has its principal place of business in California, there is no general jurisdiction in Florida. Moreover, there is no basis for specific jurisdiction because Plaintiff's Complaint fails to allege any facts whatsoever establishing any contacts Meta had with Florida relating to Plaintiff's claims.

***Second***, dismissal is warranted pursuant to Federal Rule of Civil Procedure 12(b)(3) for improper venue. Plaintiff purports to be a *Tennessee* resident, and the alleged Facebook Group is purportedly related to *Nashville*. The Complaint is devoid of any facts that Meta (or any of the other Defendants) are located in Florida or engaged in (or directed) any activity towards Florida, or that any of the events giving rise to Plaintiff's claim took place in Florida.

***Third***, notwithstanding a lack of personal jurisdiction and improper venue, dismissal is also separately warranted pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim as to Meta. Plaintiff's right of publicity claim fails because he does not allege that his

name and likeness were used by Meta to directly promote a product or service. And each of Plaintiff's claims seeks to treat Meta as a publisher of third-party content and therefore runs headlong into Section 230 of the Communications Decency Act ("Section 230").

This Court should dismiss Plaintiff's Complaint as to Meta with prejudice.

## II.     FACTUAL BACKGROUND

Plaintiff purports to be a Tennessee resident with unidentified "business and personal interests" in Florida. Compl. ¶ 1. On June 27, 2025, Plaintiff sued Meta; Spill The Tea, Inc. ("STT"); AWDTSG, Inc. ("AWDTSG"); and Transglobal Assets Inc. ("Transglobal") over certain content allegedly posted by users in a Facebook Group named "DateGuard Are We Dating the Same Guy? – Nashville." *See id.* ¶ 5. None of the Defendants are alleged to be incorporated or have their principal place of business in Florida. *See generally id.* ¶¶ 2-6.

Plaintiff claims that "authorized agents of and individuals associated with" the Facebook Group DateGuard Are We Dating the Same Guy? – Nashville "republished" slightly altered photographs of him that were originally posted on a dating platform and presented them alongside "disparaging and inflammatory content, implicitly associating him with negative characterizations" in the Facebook Group. *Id.* ¶¶ 12, 13. Plaintiff alleges STT, Transglobal, and AWDTSG (collectively, the "DateGuard Defendants") operate the Facebook Group, which is purportedly "designed to allow anonymous commentary, personal accusations, and photographs of individuals purportedly involved in 'shady' conduct." *Id.* ¶ 14.

Meta is not alleged to have participated in the creation or publication of the content. Instead, Plaintiff alleges that Meta owns and controls the "Facebook ecosystem," in which the Facebook Group was "created and maintained," and that Meta generates revenue from user activity in the group through purported "targeted advertising revenue, data harvesting, and behavioral

tracking." Compl. ¶¶ 16-17. He also alleges Meta "was placed on written notice by Plaintiff, either via reporting tools or internal moderation activity, of the nonconsensual and misleading use of Plaintiff's photograph," but that Meta "failed to remove, flag, or suppress" the third-party content. *Id.* ¶ 18. The only claims asserted against Meta are for "Violation of Right of Publicity" and "Temporary and Permanent Injunctive Relief." As to the second claim, Plaintiff seeks an order requiring Meta "to remove or disable access to all infringing posts containing Plaintiff's identity or likeness from its platform." *See id.* ¶ 44; *see also* Prayer for Relief.

Plaintiff claims he "has suffered reputational injury, disruption of personal and professional relationships, anxiety, humiliation, and persistent emotional anguish." Compl. ¶ 19. Other than a conclusory statement claiming that Plaintiff has unspecified "substantial business and personal interests in [Florida]," (*see id.* ¶ 1), Plaintiff does not identify any conduct by Meta, or any other Defendant, that was directed toward or took place in Florida.

## III.   ARGUMENT

### A.   The Complaint Should Be Dismissed for Lack of Personal Jurisdiction.

"A court must dismiss an action against a defendant over which it has no personal jurisdiction." *Kinney v. Mindsize, LLC*, No. 20-62094-CIV, 2021 WL 3911859, at *2 (S.D. Fla. June 7, 2021) (citing *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1214 (11th Cir. 1999)). "A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009). The plaintiff establishes a prima facie case if it "presents enough evidence to withstand a motion for directed verdict." *Consol. Dev. Corp. v. Sherritt, Inc.,* 216 F.3d 1286, 1291 (11th Cir. 2000) (citation omitted).

Plaintiff's sole allegation regarding personal jurisdiction is the conclusory assertion that "Defendants are subject to personal jurisdiction in Florida because they committed tortious acts causing injury there and engaged in business activities in and directed toward Florida." Compl. ¶ 9. This is insufficient to allege general or specific jurisdiction over Meta. To determine personal jurisdiction over a non-resident defendant, a court must first determine whether jurisdiction is appropriate under Florida's long-arm statute, which provides for both general and specific jurisdiction. *See Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990); Fla. Stat. § 48.193. Next, if there is a basis for personal jurisdiction under the long-arm statute, the court must decide whether sufficient "minimum contacts" exist to satisfy the Due Process Clause of the Fourteenth Amendment. *Madara*, 916 F.2d at 1514 (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). The Complaint's single conclusory allegation fails to allege sufficient contacts between Meta and Florida to subject Meta to personal jurisdiction in Florida.

### 1. Meta is not subject to general personal jurisdiction in Florida.

A court may assert general jurisdiction over nonresident defendants only when their "affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quoting *Int'l Shoe*, 326 U.S. at 317); *see* Fla. Stat. § 48.193(2) (requiring "substantial and not isolated activity" in Florida). Absent exceptional circumstances, a corporate defendant is only "at home" where it is either incorporated or has its principal place of business. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014).

Meta is undisputedly not "at home" in Florida. Plaintiff concedes that Meta is a Delaware corporation with its principal place of business in Menlo Park, California. *See* Compl. ¶ 6. And courts have consistently held that there is no basis for establishing general jurisdiction over Meta

elsewhere. *See Garrett-Alfred v. Facebook, Inc.*, 540 F. Supp. 3d 1129, 1136 (M.D. Fla. 2021) (finding no general jurisdiction over Facebook where alleged affiliations were "not continuous and systematic enough to render [it] at home in Florida"); *accord Romero v. Meta Platforms, Inc.*, No. 23-CV-3306, 2024 WL 3466403, at *4-5 (D.S.C. July 19, 2024) (finding no general jurisdiction over Meta where "Meta is a Delaware corporation with its primary place of business in California" and "there is no evidence of any affiliations with South Carolina that are so substantial that Meta may be considered comparable to a South Carolina company" (quoting Magistrate's Report and Recommendation)), *aff'd*, No. 24-1729, 2024 WL 5200156 (4th Cir. Dec. 23, 2024), *cert. denied*, 145 S. Ct. 1972 (2025); *Russell v. Meta Platforms, Inc.*, No. 23-CV-193, 2024 WL 4800365, at *3 (N.D. Miss. May 29, 2024) (finding no basis for general jurisdiction in Mississippi because Meta is "incorporated in Delaware and its principal place of business is in California"); *Godwin v. CPF River Oaks Austin, L.L.C.*, No. 23-CV-1566-DII, 2024 WL 2732670, at *8 (W.D. Tex. May 28, 2024) (finding no general jurisdiction in Texas because "Meta is not incorporated in Texas, and Texas is not Meta's principal place of business."), *appeal dismissed*, No. 24-50531, 2024 WL 5277355 (5th Cir. July 30, 2024).

## 2.    Meta is not subject to specific personal jurisdiction in Florida.

To establish specific jurisdiction over a nonresident defendant like Meta, Plaintiff must show that his claims "arise out of or relate to a defendant's contacts with Florida." *Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1204 (11th Cir. 2015); *see* Fla. Stat. § 48.193(1) (listing acts that subject a defendant to specific personal jurisdiction). To make this determination, courts decide whether the defendant's "conduct and connection with the forum State are such that [it] should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980). This turns on "whether *the defendant's* actions connect [it]

to the *forum*." *Walden v. Fiore,* 571 U.S. 277, 288-89 (2014) (no "minimal contacts" where "no part of [defendant]'s course of conduct occurred in" the forum state).

Here, Plaintiff fails to allege any conduct by Meta in Florida *whatsoever*—let alone conduct related to Plaintiff's claims—that would give rise to specific jurisdiction under Florida's long-arm statute. Plaintiff's conclusory allegation that "Defendants are subject to personal jurisdiction in Florida because they committed tortious acts causing injury there and engaged in business activities in and directed toward Florida" (Compl. ¶ 9) is not sufficient to establish specific jurisdiction in the absence of supporting factual allegations. *See Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1318 (11th Cir. 2006) (explaining that "vague and conclusory allegations … are insufficient to establish a prima facie case of personal jurisdiction"); *In re Takata Airbag Prods. Liab. Litig.*, 396 F. Supp. 3d 1101, 1142 (S.D. Fla. 2019) ("Relying on *Snow*, courts in the Eleventh Circuit have repeatedly declined to exercise specific jurisdiction over a nonresident defendant on the basis of generalized and conclusory allegations—like those advanced by Plaintiff[] here." (citing cases)).

The Complaint entirely fails to allege that Meta directed any business activities toward Florida that gave rise to Plaintiff's Complaint. The only conduct by Meta alleged in the Complaint is that Meta "hosted and promoted content within its Facebook platform" that Plaintiff found objectionable. Compl. ¶¶ 40-42. But this conduct—as alleged—did not arise from *Meta's* contacts with Florida and therefore is insufficient to support specific jurisdiction. *See Garrett-Alfred*, 540 F. Supp. 3d at 1136 (concluding that no specific jurisdiction existed over Facebook for claims that were not sufficiently related to Meta's Florida contacts); *Facebook, LLC v. Grind Hard Holdings, LLC*, 390 So. 3d 142, 145 (Fla. Dist. Ct. App. 2024) (finding that plaintiff failed to sufficiently allege specific jurisdiction over Facebook in Florida); *accord Harrison v. Facebook,*

*Inc.*, No. CV 18-0147, 2019 WL 1090779, at *4 (S.D. Ala. Jan. 17, 2019) ("Plaintiff's allegations

that Facebook failed to delete content that she or her agent, who happen to be residents of Alabama,

posted on her Facebook page fail to show 'with reasonable particularity any specific conduct ... by

[Facebook] that would support an exercise of specific jurisdiction' in Alabama."), *report and

recommendation adopted*, No. 18-CV-147, 2019 WL 1102210 (S.D. Ala. Mar. 8).

As noted above, there are no allegations that anyone relevant to this case accessed

Facebook in Florida.  Even if there were such allegations, however, courts have consistently held

that the mere fact that users may have accessed Facebook in the forum state is insufficient to

establish specific jurisdiction over Meta in that state.  *See, e.g.*, *Russell v. Meta Platforms, Inc.*,

No. 23-CV-193, 2024 WL 4800365, at *3 (N.D. Miss. May 29, 2024) ("[P]ersonal jurisdiction

over [Meta] may not exist simply because a user avails himself of Facebook's services in a state

other than the state in which [Meta] is incorporated and has its principal place of business.")

(quoting *Ralls v. Facebook*, 221 F. Supp. 3d 1237, 1244 (W.D. Wash. 2016)); *Harrison*, 2019 WL

1090779, at *4 (same); *Gullen v. Facebook.com, Inc.*, No. 15 C 7681, 2016 WL 245910, at *2

(N.D. Ill. Jan. 21, 2016) ("[T]he fact that [Facebook's] site is accessible to Illinois residents does

not confer specific jurisdiction over Facebook."); *see also, e.g.*, *Nunes v. Cable News Network,

Inc.*, No. 22-CV-2659, 2023 WL 2468646, at *4-5 (M.D. Fla. Mar. 1, 2023) (concluding that a

news network did not purposefully direct its activities into Florida when it circulated alleged

defamatory statements nationally by telecast and Internet); *Sovereign Offshore Servs., LLC v.

Shames*, No. 17-CV-80172, 2017 WL 7798664, at *4 (S.D. Fla. Aug. 3, 2017) (concluding that

defendant's "awareness that his blog posts would be accessible in Florida" combined with

plaintiff's location in Florida were "insufficient to establish that Defendant has minimum contacts

with Florida"); *Estes v. Rodin*, 259 So. 3d 183, 197 (Fla. Dist. Ct. App. 2018) ("Having an

'interactive website' ... should not open a defendant up to personal jurisdiction in every spot on the planet where that interactive website is accessible."). Indeed, Plaintiff's unsubstantiated allegation that he has "substantial business and personal interests in the State of Florida" is insufficient to show that Plaintiff (a Tennessee resident) was injured in Florida, Compl. ¶¶ 1, 8-9, especially because the Facebook Group appears to be focused on Nashville, and there is no allegation that anyone in Florida even saw the complained-of content.

In short, Plaintiff has not alleged any facts suggesting that Meta has sufficient minimum contacts with Florida to give rise to specific jurisdiction.

***

Because Plaintiff fails to establish either general or specific jurisdiction over Meta, the claims against Meta should be dismissed for lack of personal jurisdiction.

### B.    Venue In This Court Is Improper.

"[T]he plaintiff bears the burden of showing that the venue selected is proper" under Rule 12(b)(3). *BPI Sports, LLC v. PHD Fitness LLC*, No. 14-60069-CIV, 2014 WL 11706458, at *1 (S.D. Fla. June 13, 2014) (citation omitted). Under 28 U.S.C. § 1391, a civil action may be brought in "(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, … ; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." *Id.*

Plaintiff asserts venue under 28 U.S.C. § 1391(b)(2) (*see* Compl. ¶ 8), which requires that "a substantial part of the events or omissions giving rise to the claim occurred" in the Southern District of Florida. When deciding whether a substantial part of the activities giving rise to a claim

occurred in a particular venue, courts "focus on relevant activities of the defendant, not of the plaintiff." *Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1371-72 (11th Cir. 2003) (citation omitted). The activities must have a "close nexus" to the alleged wrong. *Id.* at 1372. "Only the events that directly give rise to a claim are relevant. And of the places where the events have taken place, only those locations hosting a 'substantial part' of the events are to be considered." *Id.* at 1371.

Here, there are no factual allegations that Meta (or any of the other Defendants) did anything in or directed any conduct towards Florida. Neither Plaintiff nor any of the Defendants reside in Florida, and the "events or omissions giving rise to the claim" appear to have taken place online in a Facebook Group focused on Nashville, Tennessee. *See* Compl. ¶¶ 12-13. Plaintiff does not assert that *any* allegedly harmful conduct took place in Florida. In fact, Plaintiff makes only a *single* conclusory allegation with respect to the DateGuard Defendants, alleging they "regularly and substantially engage in business in the State of Florida, in addition to numerous other states." *See id.* ¶ 5. While Plaintiff, who admittedly lives in Tennessee (Compl. ¶ 1), summarily alleges that venue is proper in this District because "a substantial part of the events giving rise to the claim, and the injury caused to Plaintiff's reputation and business occurred" here, he alleges *no facts* in support. *Id.* ¶ 8.

These conclusory allegations do not suffice to establish venue in the Southern District of Florida—there are *no* factual allegations that any of the Defendants conduct any relevant activity in this District, much less a "substantial part" of the events giving rise to Plaintiff's claims. Based on the Complaint, it is unclear why this action was filed in Florida at all. Because "none of the Defendants reside in this district, a substantial part of the events giving rise to [Plaintiff]'s claims did not occur in this district, and other viable districts exist in which [Plaintiff] could have properly

filed his claims" (*see infra*), the Southern District of Florida is an improper venue under 28 U.S.C. § 1391(b).  *Trump v. Simon & Schuster, Inc.*, No. 23-cv-2333, 2023 WL 5000572, at *5 (N.D. Fla. Aug. 4, 2023) (finding venue improper where "*none* of the relevant events—let alone 'a substantial part' of them—occurred in this district"); *Lynch v. Bailey-Roka*, No. 22-cv-14338, 2023 WL 4144365, at *2 (S.D. Fla. June 23, 2023) ("The Southern District of Florida is an improper venue for this case because substantial events giving rise to Plaintiffs' claims took place outside this District."); *see also Fletcher v. Facebook, Inc.*, No. 24-cv-01384, 2025 WL 714238, at *4 (D.S.C. Feb. 13, 2025) (finding venue improper where plaintiff's "description of events" in the complaint did not support assertion that all "acts necessary or precedent" to the lawsuit occurred in South Carolina); *Petersen v. Meta, Inc.*, No. 24-cv-00038, 2024 WL 4719714, at * 7 (S.D. Tex. Sept. 4, 2024) (finding venue improper where plaintiff "has not shown that 'a substantial part of the events or omissions giving rise to the claim' occurred in [the] district" it was brought).

When, like here, venue is improper, the district court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."  28 U.S.C. § 1406(a).  The decision to dismiss or transfer a case pursuant to Section 1406(a) "is left to the sound discretion of the district court."  *Trump*, 2023 WL 5000572, at *2 (quoting *Pinson v. Rumsfeld*, 192 Fed. App'x 811, 817 (11th Cir. 2006)).  As the Complaint will fail regardless of whether the Court determines that venue is improper (*see infra* 11-19), this Court should therefore dismiss this case for improper venue under Section 1406(a) and Rule 12(b)(3), as opposed to transferring.  *See Island Sky Corp. v. Hertz*, No. 19-61551-CIV, 2020 WL 13261141, at *4 (S.D. Fla. Feb. 11, 2020) (dismissing complaint under Rule 12(b)(3) for improper venue).

Should the Court instead prefer to transfer this case, it may transfer "to any district or division in which it could have been brought."  28 U.S.C. § 1406(a).  Based on the allegations of

the Complaint, this case could have been brought in the Northern District of California. Meta has its principal place of business there and is the owner and operator of Facebook. *See* Compl. ¶¶ 6, 12-14. In addition, all users of Facebook must agree to Meta's Terms of Service, and those Terms include a forum selection clause requiring claims to be resolved in the Northern District of California, which is yet another reason why California is an available venue as opposed to Florida. *See, e.g.*, *Loomer v. Facebook, Inc.*, No. 19-CV-80893, 2020 WL 2926357, at *3 (S.D. Fla. Apr. 13, 2020) (transferring case to Northern District of California pursuant to Meta's forum selection clause). Moreover, "[v]enue in California is … appropriate because of its strong interest in deciding controversies involving Facebook at home and the familiarity of its judges with applying California law." *Kidstar v. Facebook, Inc.*, No. 18-cv-13558, 2020 WL 4382279, at *5 (D.N.J. July 31, 2020); *see also, e.g.*, *Fletcher*, 2025 WL 714238, at *5 (transferring to Northern District of California based on improper venue).

Accordingly, Plaintiff's Complaint was brought in an improper venue and should be dismissed or transferred to the Northern District of California.

### C.   Plaintiff's Complaint Fails to State a Claim Against Meta.

A complaint that "fail[s] to state a claim upon which relief can be granted" must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

### 1.   Plaintiff's right of publicity claim against Meta fails as a matter of law.

Plaintiff attempts to state a right of publicity claim under Fla. Stat. § 540.08, which

prohibits "unconsented use of an individual's name and likeness only when such [use] directly promotes a commercial product or service." *Nat'l Football League v. Alley, Inc.*, 624 F. Supp. 6, 10 (S.D. Fla. 1983); Fla. Stat. § 540.08(1) ("No person shall publish, print, display or otherwise publicly use for purposes of trade or for any ***commercial*** or ***advertising*** purpose the name, portrait, photograph, or other likeness of any natural person without the express written or oral consent to such use …."). In evaluating a claim under this statute, the Court must examine whether the defendant used the plaintiff's name, portrait, photograph, or other likeness without the plaintiff's consent. *Taylor v. Trapeze Mgmt., LLC*, No. 17-cv-62262, 2019 WL 1468515, at *7 (S.D. Fla. Feb. 27, 2019). The Court then must determine whether such use was for trade or any commercial or advertising purposes. *Id.* "Under Fla. Stat. § 540.08, the terms 'trade,' 'commercial,' or 'advertising purpose' mean using a person's name or likeness to directly promote a product or service." *Lane v. MRA Holdings, LLC*, 242 F. Supp. 2d 1205, 1212 (M.D. Fla. 2002) (citation omitted); *see Tyne v. Time Warner Ent. Co.*, 901 So.2d 802, 807 (Fla. 2005) (§ 540.08 does not apply where the publication does "not directly promote a product or service").

Here, Plaintiff's claim is doomed because the Complaint does not (and cannot) plausibly allege that Meta used Plaintiff's identity to directly promote a product or service. Rather, Plaintiff's claim rests on the allegation that Meta "knowingly hosted and promoted content within its Facebook platform that included Plaintiff's identifiable photograph and first name without consent." Compl. ¶ 40. But Plaintiff does not—and cannot—allege that Meta used his photograph to directly (or even indirectly) promote a product or service. Indeed, according to the Complaint, people associated with the other Defendants (not Meta) "copied [Plaintiff's] photographs from the dating site, used artificial intelligence to make minor alterations, and republished them within the [Facebook Group]." *Id.* ¶ 12. There is no allegation that Meta (or anyone, for that matter) sought

or received any commercial benefit for posting the photo or posted the photo to directly promote another product or service. *See, e.g.*, *Fuentes v. Mega Media Holdings, Inc.*, 721 F. Supp. 2d 1255, 1259-60 (S.D. Fla. 2010) (dismissing § 540.08 claims where sole allegation was that the plaintiff's likeness was used during a television broadcast and clips of the broadcast were posted online).

Plaintiff's allegation that Meta "hosted and promoted content" that included Plaintiff's "photograph and first name" is insufficient. Compl. ¶ 40; *see Lane*, 242 F. Supp. 2d at 1213 (right of publicity claim failed where plaintiff was "never shown endorsing or promoting a product, but rather, as part of an expressive work"). And Plaintiff's attempt to shoehorn his allegations into the language and purpose of § 540.08 fall flat. For example, Plaintiff asserts that Meta generally "monetizes user activity and engagement … through targeted advertising revenue, data harvesting, and behavioral tracking" (Compl. ¶ 17) and monetized the Facebook Group "through advertising and platform engagement strategies that prioritize viral and high-interaction content," (*id.* ¶ 41). These allegations regarding Meta's commercial activity in general do not qualify as "commercial purpose[s]" as to the alleged use of Plaintiff's name and photograph in the Facebook Group, and Plaintiff therefore fails to state a right of publicity claim. *See, e.g., Noshirvan v. Couture*, No.23-cv-1218, 2025 WL 1769669, at *15 (M.D. Fla. June 26, 2025) (dismissing claim where the publications were made "for the purpose of ruining [plaintiff's] reputation and destroying him financially," and stating an "unspecified 'advertisement' was published for a 'commercial purpose' elsewhere in the [complaint] does not suffice"); *Anderson v. Coupons in the News*, No. 20-13677, 2021 WL 6098420, at *1 (11th Cir. Dec. 21, 2021) (dismissing § 540.08(1) claim where article using plaintiff's photograph was not "an advertisement" or "commercial speech").

### 2. Plaintiff cannot state a claim for injunctive relief from Meta.

Plaintiff purports to state a "claim" for a temporary and permanent injunction, seeking "injunctive relief to prevent ongoing and irreparable harm caused by the unauthorized use,

publication, and dissemination of his image, likeness, and first name." Compl. ¶ 46. But there is no independent claim for injunctive relief: the Eleventh Circuit has made clear that "any motion or suit for either a preliminary or permanent injunction must be based upon a cause of action," and for a traditional injunction to be even theoretically available, a "plaintiff must be able to articulate a basis for relief that would withstand scrutiny under Fed. R. Civ. P. 12(b)(6) (failure to state a claim)." *Alabama v. U.S. Army Corps of Eng'rs*, 424 F.3d 1117, 1127 (11th Cir. 2005) (citation and internal quotations omitted). Indeed, it is well-settled that an injunction is "a remedy potentially available only *after* a plaintiff can make a showing that some independent legal right is being infringed—if the plaintiff's rights have not been violated, he is not entitled to any relief, injunctive or otherwise." *Florida Beauty Flora Inc. v. Pro Intermodal L.L.C.*, No. 20-cv-20966, 2021 WL 1945821, at *10 (S.D. Fla. May 14, 2021) (emphasis added) (citation omitted) (finding that the "'claims' for injunctive relief are remedies and are not properly brought as independent, substantive claims"). Florida courts therefore consistently dismiss independent "injunctive relief claims." *See, e.g., Lima v. Intermarine Invs., LLC*, No. 21-cv-20702, 2021 WL 7542980, at *2 (S.D. Fla. July 31, 2021) ("Plaintiff's Complaint does not allege that an independent right is being infringed, and thus Plaintiff's claim for injunctive relief is not properly before this Court.").

Here, beyond the fact that Plaintiff cannot state an independent claim for injunctive relief, Plaintiff also cannot state a claim for right of publicity against Meta (*see supra* 12-13); consequently, Plaintiff's request for injunctive relief fails. *Pro. Plaza Condo Ass'n, Inc. v. Landmark Infrastructure Holding Co.*, No. 20-20707-CIV, 2020 WL 13389813, at *5 (S.D. Fla. Oct. 29, 2020) (finding claim for injunctive relief fails as a matter of law where all other claims were dismissed); *Blue Water Innovations, LLC v. Fettig*, No. 18-60671-CIV, 2019 WL 1904589, at *2 (S.D. Fla. Mar. 8, 2019) (dismissing claim for injunctive relief with prejudice because

injunctive relief is not an independent cause of action).

> **D.     Section 230 Independently Bars Plaintiff's Claims.**

Plaintiff's claims against Meta must be dismissed for the additional reason that Section 230

bars them.  Section 230(c)(1) states that "[n]o provider or user of an interactive computer service

shall be treated as the publisher or speaker of any information provided by another information

content provider."  47 U.S.C. § 230(c)(1).  Under Section 230(c)(1), a claim is barred if: (1) the

defendant is "a service provider or user of an interactive computer service," (2) the information at

issue was provided by a content provider other than the defendant, and (3) the cause of action

"treats a defendant as a publisher or speaker of [that] information."  *Roca Labs, Inc. v. Consumer

Op. Corp*., 140 F. Supp. 3d 1311, 1319 (M.D. Fla. 2015) (citation omitted); 47 U.S.C. § 230(c)(1).

The Florida Supreme Court has explained that Section 230 preempts state law claims arising from

a website's editorial decisions regarding information provided by users.  *Doe v. Am. Online, Inc.*,

783 So. 2d 1010, 1013-18 (Fla. 2001); *see also Giordano v. Romeo*, 76 So. 3d 1100, 1102 (Fla. 3d

DCA 2011) (explaining that "the law on this issue is clear": websites "enjoy[ ] complete immunity

from any action brought against [them] as a result of the postings of third party users").[1]  Plaintiff's

claims meet all three criteria under Section 230 and should therefore be dismissed.

> **1.     Meta is an interactive computer service provider.**

Section 230 defines an interactive computer service provider as "any information service,

system, or access software provider that provides or enables computer access by multiple users to

a computer server."  47 U.S.C. § 230(f)(2).  Courts nationwide have uniformly held that Meta

meets Section 230's "interactive computer service" definition.  *See, e.g., Klayman v. Zuckerberg*,

---

[1] The "immunity afforded by section 230 encompasses claims for injunctive relief."  *Medytox
Sols., Inc. v. Investorshub.com, Inc.*, 152 So. 3d 727, 731 (Fla. 4th DCA 2014) (affirming dismissal
of complaint for injunctive relief under Section 230); *Roca Labs,* 140 F. Supp. 3d at 1319 ("Section
230 also provides immunity from injunctive and declaratory relief.").

753 F.3d 1354, 1357-58 (D.C. Cir. 2014) (Facebook is an interactive computer service); *Caraccioli v. Facebook, Inc.*, 700 Fed. App'x 588, 590 (9th Cir. 2017) (affirming dismissal based on Section 230 and finding that Facebook is an interactive computer service provider); *Cross v. Facebook, Inc.*, 14 Cal. App. 5th 190, 206 (2017) (same); *see also Mezey v. Twitter, Inc.*,  No. 18-cv-21069, 2018 WL 5306769, at *1 (S.D. Fla. July 19, 2018) (finding that Twitter, "as a platform that transmits, receives, displays, organizes, and hosts content—is an interactive computer service").

### 2.  The content was provided by another information content provider.

The Complaint concedes that the posts at issue were provided by third parties or other Defendants, not Meta.  *See* Compl. ¶¶ 12-14; 47 U.S.C. § 230(c)(1).  Indeed, merely "providing the forum where harmful conduct took place cannot serve to impose liability onto a provider." *Doe on behalf of Doe v. Grindr, LLC*, No. 23-CV-193, 2023 WL 7053471, at *2-3 (M.D. Fla. Oct. 26, 2023) (cleaned up) (citation omitted) (finding Section 230 applied to plaintiff's claim regarding third-party access to service).  Here, Plaintiff alleges that Facebook users—including some of the other named Defendants—posted the allegedly "disparaging and inflammatory content" about him on Facebook.  *See, e.g.,* Compl. ¶ 13. Those users are the "information content provider[s]," not Meta.  *Dowbenko v. Google Inc.*, 582 Fed. App'x 801, 805 (11th Cir. 2014) (affirming that bloggers who posted allegedly defamatory article via Google were the "information content provider," not Google); *Mezey*, 2018 WL 5306769, at *1 (finding that Section 230 barred claims against Twitter where it merely displayed, organized, and hosted third-party user content); *Loomer v. Zuckerberg*, No. 22-cv-02646, 2023 WL 6464133, at *14 (N.D. Cal. Sept. 30, 2023) (finding Meta was not information content provider where content came "'entirely from subscribers and [was] passively displayed by" Meta) (citation omitted); *Ripple Labs Inc. v. YouTube LLC*, No. 20-cv-02747, 2020 WL 6822891, at *6 (N.D. Cal. Nov. 20, 2020) (Section 230 barred right of

publicity claim because YouTube was not "responsible, in whole or in part" for the creation of the offending online ads shown on the platform) (citation omitted).

### 3. Plaintiff's claims seek to treat Meta as a "publisher."

Under Section 230, a claim seeks to treat a defendant as a "publisher" when it "seeks to hold a service provider liable" for its purported exercise of "traditional editorial functions—such as deciding whether to publish, withdraw, postpone or alter content." *Medytox Sols.*, 152 So. 3d at 730 (citation omitted). "[A]ny activity that can be boiled down to deciding whether to exclude material that third parties seek to post online is perforce immune under section 230." *Mezey*, 2018 WL 5306769, at *1 (quoting *Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1170-71 (9th Cir. 2008)). For the purposes of Section 230, it is immaterial whether a decision is to "withdraw" versus "publish" content. *Roca Labs*, 140 F. Supp. 3d at 1324. Both are traditional "publisher" functions, and liability would be "exactly the type of liability the CDA precludes." *Id.*

Plaintiff's claims seek to hold Meta liable for "host[ing] and "promot[ing] content" in the Facebook Group, that he alleges Meta "failed to remove, flag, or suppress." Compl. ¶¶ 18, 40. As these allegations reveal, Plaintiff's claims target quintessential publishing activity, as courts have held in similar cases against Meta. *See, e.g.*, *Force v. Facebook, Inc.*, 934 F.3d 53, 66 (2d Cir. 2019) ("[A]rranging and distributing third-party information inherently forms 'connections' and 'matches' among speakers, content, and viewers of content, whether in interactive internet forums or in more traditional media. That is an essential result of publishing."); *Czyz v. Zuckerberg*, No. 502024CA000996XXXAMB (Fla. Cir. Ct., 15th Jud. Cir., Mar. 21, 2025), Order Granting Defendants' Motion to Dismiss (finding Section 230 barred defamation claim seeking to hold Meta liable as "publishers" of "articles containing the allegedly defamatory statements and the

URLS/hyperlinks to that content"); *see also Medytox Sols.*, 152 So.3d at 729 (Section 230 barred claims, including for injunctive relief, related to website "host[ing] … allegedly defamatory statements about the plaintiffs"); *Montano v. Wash. State Dep't of Health*, No. 23-23903, 2024 WL 3029155, at *14 (S.D. Fla. May 28, 2024) (Section 230 applied to claims alleging Google "displayed information").

Indeed, a lawsuit—like Plaintiff's—seeking to "force a website to remove content on the sole basis that the content is defamatory is necessarily treating the website as a publisher, and is therefore inconsistent with section 230." *Medytox Sols.*, 152 So.3d at 731.  Courts nationwide have dismissed claims against Meta under Section 230 related to its decision to allow certain content on its services.  *See, e.g.*, *Klayman*, 753 F.3d at 1359 (concluding that complaint sought to treat Facebook as publisher where it turned on "Facebook's allowing" certain pages to exist); *Reaud v. Facebook, Inc.*, No. 23-cv-06329, 2024 WL 4126066, at *5 (N.D. Cal. Sept. 9, 2024) (claims based on "allegations that Facebook allowed or posted third-party content online" are barred by Section 230 because they seek to hold "Facebook liable for its publishing decisions"); *Cohen v. Facebook, Inc.,* 252 F. Supp. 3d 140, 156 (E.D.N.Y. 2017) ("In keeping with this expansive view of the publisher's role, judicial decisions in the area consistently stress that decisions as to whether existing content should be removed from a website fall within the editorial prerogative."), *aff'd in part*, *Force*, 934 F.3d at 66; *see also Dowbenko*, 582 Fed. App'x at 805 (affirming dismissal of defamation claim against Google for allegedly publishing links to defamatory article authored by anonymous bloggers).

To the extent that Plaintiff is attempting to avoid Section 230 by including general references to Facebook's algorithms and so-called "platform engagement strategies" (Compl. ¶¶ 16, 17, 41)—allegations which have absolutely nothing to do with the purported facts

underlying Plaintiff's claims regarding third-party posts about him in a Facebook Group—courts have routinely rejected such artful pleading. *See, e.g., M.P. by and through Pinckney v. Meta Platforms, Inc.*, 127 F.4th 516, 521-22 (4th Cir. 2025) (barring under Section 230 claims that "attack the manner in which Facebook's algorithm sorts, arranges, and distributes third-party content"), *cert. pending,* No. 24-1133 (filed May 2, 2025); *Patterson v. Meta Platforms, Inc.*, --- N.Y.S.3d ---, 2025 WL 2092260, at *4 (N.Y. App. Div. July 25, 2025) (finding that allegations regarding the use of content-recommendation algorithms by social media defendants did not deprive those defendants of their status as publishers of third-party content for Section 230 purposes); *Doe (K.B.) v. Backpage.com, LLC,* 724 F. Supp. 3d 882, 884 (N.D. Cal. 2024) ("Doe 'cannot plead around Section 230 immunity by framing' her claim as one involving Meta's connection algorithms rather than the user-generated content that those algorithms facilitate.") (citation omitted); *Dyroff v. Ultimate Software Group, Inc.,* 934 F.3d 1093, 1098 (9th Cir. 2019) (plaintiff cannot "plead around Section 230 immunity by framing" website features, including "algorithms," as content). Accordingly, Plaintiff's claims are independently barred by Section 230 and must be dismissed.[2]

---

[2] Meta acknowledges that there is a Circuit split on whether state right of publicity claims fall within the "intellectual property" exception to Section 230. 47 U.S.C. § 230(e)(2). While the Eleventh Circuit has not decided the issue, courts in the Ninth Circuit have consistently applied Section 230 to state right of publicity claims. *See Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1119 (9th Cir. 2007) (concluding that Section 230(e)(2) refers only to federal intellectual property law). *But see Hepp v. Facebook*, 14 F.4th 204, 214 (3d Cir. 2021) (concluding that Pennsylvania right of publicity claim qualified as intellectual property claim but expressing "no opinion as to whether other states' rights of publicity qualify"). In *Hepp*, the court's "narrow[]" decision turned on the plaintiff's specific theory, which was more analogous to trademark infringement, and raised concerns regarding consumer confusion as opposed to privacy. *Id.* Here, Plaintiff's purported concern relates to his image and likeness being exposed on Facebook, not any supposed "consumer confusion" like in *Hepp*. Further, unlike the right of publicity statute analyzed in *Hepp*, courts have specifically held that Fla. Stat. § 540.08 is not an "intellectual property" law within the meaning of the provision, but rather akin to an "invasion of privacy" tort. *See Gannett Co. v.*

### E.       Plaintiff Should Not Be Granted Leave to Amend.

As a general matter, "a district court may properly deny leave to amend the complaint" when "such amendment would be futile." *Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1262-63 (11th Cir.2004). Here, amendment would be futile. *First*, as established above, Plaintiff's claims suffer fatal deficiencies that cannot be overcome with further amendment. *See* Section III.A-D, *supra*. *Second*, Plaintiff's claims will be barred by Section 230 no matter what additional facts he pleads because, at bottom, he is challenging Meta's alleged decision to allow content on Facebook, which is a traditional editorial function protected by Section 230(c)(1). Courts often deny leave to amend when Section 230(c)(1) applies because the statute bars all efforts to hold a service provider liable for its decision to remove content and cannot be "circumvent[ed]" with "creative pleading." *Kimzey v. Yelp! Inc.*, 836 F.3d 1263, 1265-66 (9th Cir. 2016); *see, e.g.*, *Doe v. Kik Interactive, Inc.*, 482 F. Supp. 3d 1242, 1251-52 (denying request to amend where claims were barred by Section 230, and so any proposed amendment would be futile).

## IV.       CONCLUSION

For the foregoing reasons, Meta respectfully requests that the Court dismiss this case for lack of personal jurisdiction, improper venue, or alternatively for failure to state a claim.

## <u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(a)(2)</u>

Counsel for Defendant Meta Platforms, Inc. informed counsel for Plaintiff of the bases for this Motion on August 28, 2025. As of the date of this filing, the parties have been unable to resolve the issues raised herein.

---

*Anderson*, 947 So. 2d 1, 4 (Fla. Dist. Ct. App. 2006) (recognizing "commercial appropriation of one's name or likeness" as one of four types of invasions of privacy under Florida law); *Burciaga v. Gold Club Tampa, Inc.*, No. 16-cv-790-T-27JSS, 2016 WL 9526567, at *4 (M.D. Fla. Dec. 28, 2016) (noting that Florida recognizes appropriation as a privacy tort, and § 540.08 is substantially the same as common law misappropriation). Section 230 therefore applies to Plaintiff's § 540.08 claim here.

Dated: September 2, 2025

Respectfully submitted,

**ORRICK, HERRINGTON & SUTCLIFFE LLP**

*/s/ Diana Marie Fassbender*
Diana Marie Fassbender
Florida Bar No. 17095
dszego@orrick.com
2100 Pennsylvania Avenue NW
Washington, DC  20037
Telephone: (202) 339-8533
Facsimile: (202) 339-8500

*Attorneys for Defendant*
*Meta Platforms, Inc.*