UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 0:25-cv-61308-KMM

SHAWN SILVER,

                Plaintiff,

vs.

SPILL THE TEA, INC., a
Delaware corporation,
AWDTSG, Inc., a Delaware
corporation, TRANSGLOBAL
ASSETS INC., a Wyoming
corporation, jointly and severally
d/b/a DATEGUARD ARE WE
DATING THE SAME GUY? - NASHVILLE,
and META PLATFORMS, INC.,
a Delaware corporation,

                Defendants.
_____/

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO META PLATFORMS,
INC.'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION,
IMPROPER VENUE, AND FAILURE TO STATE A CLAIM
AND MEMORANDUM OF LAW IN SUPPORT THEREOF**

Plaintiff, SHAWN SILVER, through undersigned counsel, files his Memorandum of Law in Opposition to Meta Platforms, Inc.'s Motion to Dismiss.

## I. INTRODUCTION

Meta Platforms, Inc. ("Meta") seeks dismissal of this lawsuit through a series of arguments that fundamentally mischaracterize both the facts alleged in the Complaint and the applicable law. Contrary to Meta's assertions, this Court has personal jurisdiction over Meta, venue is proper in the Southern District of Florida, Plaintiff has stated valid claims for relief, and Section 230 of the Communications Decency Act ("Section 230") does not immunize Meta's conduct.

This case involves Meta's knowing participation in the unauthorized commercial exploitation of Plaintiff's image and likeness through its Facebook platform. Meta did not merely provide a passive forum for third-party content. Rather, as alleged in the Complaint, Meta actively promoted and monetized defamatory content containing Plaintiff's photograph and personal information, **refused to remove such content after being notified of its unauthorized nature**, and profited from the resulting user engagement and controversy.

The Complaint alleges that Meta: (1) knowingly hosted and promoted content using Plaintiff's identifiable photograph and name without consent; (2) monetized this content through targeted advertising and data harvesting; (3) used algorithms to increase the visibility and engagement of controversial content; and (4) failed to remove the unauthorized content despite receiving notice from Plaintiff. These allegations, taken as true, establish both personal jurisdiction and valid causes of action against Meta.

## II. STATEMENT OF FACTS

The facts, as alleged in the Complaint and accepted as true for purposes of this motion, establish the following:

Plaintiff Shawn Silver is a Tennessee resident with substantial business and personal interests in Florida. Compl. ¶ 1.  Plaintiff commissioned professional photographs for use on a private, password-protected dating platform.  *Id*. ¶ 11.

Without Plaintiff's knowledge or consent, individuals associated with the DATEGUARD Defendants accessed these private photographs, made alterations using artificial intelligence, and republished them in a Facebook Group called "DATEGUARD Are We Dating The Same Guy? –

2

Nashville." *Id*. ¶¶ 12-13. The posts included Plaintiff's first name ("Shawn") and presented the photographs alongside "disparaging and inflammatory content" designed for "public shaming and ostracization." *See id*. ¶¶ 13, 15.

Meta, as the owner and operator of Facebook, provided the platform for this wrongful conduct. More significantly, Meta actively participated in the commercial exploitation of Plaintiff's image by: (1) hosting and promoting the unauthorized content; (2) using algorithms to increase the visibility and engagement of the posts; (3) monetizing the content through targeted advertising, data harvesting, and behavioral tracking; and (4) **refusing to remove the content despite receiving notice from Plaintiff of its unauthorized nature**. *Id*. ¶¶ 16-18, 40-43. Meta failed to take remedial action after being placed on notice by Plaintiff and allowed continued commercial benefit from the unauthorized use. *Id*. ¶ 42.

As a direct result of Meta's conduct, Plaintiff has suffered reputational injury, disruption of personal and professional relationships, anxiety, humiliation, and persistent emotional anguish. *Id*. ¶ 19. Plaintiff alleges that the amplification of Plaintiff's identity and image served Meta's commercial interests and violated his rights under Fla. Stat. § 540.08. *Id*. ¶ 43.

### III.  ARGUMENT

To survive a motion to dismiss for failure to state a claim, a plaintiff must plead sufficient facts to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). A claim is plausible on its face when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. When considering the motion, the

court accepts all factual allegations of the complaint as true and construes them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). Courts should limit their "consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004).

A.   **This Court Has Personal Jurisdiction Over Meta.**

Meta's challenge to personal jurisdiction fails because Plaintiff has adequately alleged facts establishing specific personal jurisdiction under Florida's long-arm statute and the Due Process Clause. The Complaint alleges that Meta's conduct was directed toward Florida and caused injury to Plaintiff's Florida business and personal interests.

1. **Meta is Subject to Specific Personal Jurisdiction in Florida.**

For specific personal jurisdiction to exist, a plaintiff must show that: (1) the defendant has minimum contacts with the forum state, and (2) the assertion of jurisdiction comports with traditional notions of fair play and substantial justice. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291-92 (1980).

Florida's long-arm statute provides for jurisdiction over defendants who commit tortious acts causing injury within Florida. Fla. Stat. § 48.193(1)(b). The Complaint alleges that Meta's tortious conduct caused injury to Plaintiff's substantial business and personal interests in Florida. Compl. ¶¶ 1, 8-9.

2. **Meta's Contacts with Florida Are Substantial and Purposeful.**

a)   Meta's Citations to General Jurisdiction Cases are Inapplicable.

Meta cites *Daimler AG v. Bauman*, 571 U.S. 117 (2014), and *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915 (2011), for the proposition that it cannot be subject to general jurisdiction in Florida. These cases are irrelevant because Plaintiff does not seek general jurisdiction over Meta. Instead, Plaintiff seeks specific jurisdiction based on Meta's conduct relating to this specific case. The cases Meta cites regarding general jurisdiction (*Garrett-Alfred v. Facebook, Inc.*, *Romero v. Meta Platforms, Inc.*, *Russell v. Meta Platforms, Inc.*, *Godwin v. CPF River Oaks Austin, L.L.C.*) are all distinguishable because they involved attempts to establish general jurisdiction. Here, Plaintiff relies on specific jurisdiction.

      b)    <u>The Specific Jurisdiction Cases Cited by Meta Are Factually Distinguishable</u>.

Meta relies on *Garrett-Alfred v. Facebook, Inc.*, 540 F. Supp. 3d 1129 (M.D. Fla. 2021), but that case is also distinguishable on multiple grounds. In *Garrett-Alfred*, a nationwide class action suit, the court found insufficient specific jurisdiction because the plaintiff failed to allege that Facebook's conduct was specifically directed at Florida or caused injury in Florida. Specifically, the court in *Garrett-Alfred* determined that "[B]ecause the Arizona plaintiffs' claims do not **arise from or relate to Defendants' contacts with Florida**, Defendants' motions to dismiss for lack of personal jurisdiction are granted (emphasis added)". Here, by contrast, Plaintiff specifically alleges that he has substantial business and personal interests in Florida that were injured by Meta's conduct.

Similarly, *Facebook, LLC v. Grind Hard Holdings, LLC*, 390 So. 3d 142 (Fla. Dist. Ct. App. 2024), an authority cited by Meta, involved a plaintiff who failed to establish any connection between the defendant's conduct and Florida. Here, Plaintiff alleges both Florida business interests and injury occurring in Florida. As noted by the Florida Third District in

5

*Grind Hard Holdings*, the complaint in that case **did not allege a tort claim against Facebook**, thus the Court could find no precedent to support the proposition that Facebook's purported violation of its own policies and procedures is a sufficient substitute for alleging it engaged in a tort in the state, and that, in the absence of a tort, the "effects test" cannot be used to circumvent the language of the statute. The Court further explained that "[a] Florida court may exercise 'specific' jurisdiction over a nonresident defendant in those cases in which it is alleged that the nonresident defendant commits any of the specific acts enumerated in the statute in Florida, so long as the cause of action arises from that enumerated act committed in Florida." *Banco de los Trabajadores v. Cortez Moreno*, 237 So. 3d 1127, 1133 (Fla. 3d DCA 2018) (citing §48.193(1)(a)1.–9., Fla. Stat.)…"Included among the statutorily delineated acts is the commission of a tortious act within the state. § 48.193(1)(a)2., Fla. Stat." Again, in the instant case, Plaintiff alleges a specific statutory violation alongside both Florida business interests and injury occurring in Florida.

*Harrison v. Facebook, Inc.*, No. CV 18-0147, 2019 WL 1090779 (S.D. Ala. Jan. 17, 2019), a case also cited by Meta, is particularly distinguishable because it involved only a request to delete content from a user's own Facebook page, with no allegations of active promotion or monetization by Facebook. According to the allegations of that complaint, "at some point in or about 2016, (plaintiff) was not able to log on and manage her pages that contained the copyrighted materials and, therefore, in November of 2016, she demanded that Facebook remove all content on her pages. (*Id*.). However, according to the plaintiff's complaint, "Facebook continues to unlawfully publicly display the unauthorized work." (*Id*. at p. 4). Plaintiff alleged that this act constitutes copyright infringement and sought recovery of monetary

6

damages arising from the alleged infringement. (*Id*. at pp. 4-6).  Here, Meta actively promoted content containing Plaintiff's image through its algorithms and monetized it through advertising.

    c)  <u>Meta's Conduct Was Specifically Directed at Florida</u>.

Unlike the passive hosting arrangements in the cases Meta cites, the Complaint alleges that Meta:

- Actively promoted content containing Plaintiff's image through algorithmic amplification designed to maximize engagement and revenue
- Generated advertising revenue from users viewing the unauthorized content, including Florida users
- Collected valuable user data from interactions with Plaintiff's image
- Refused to remove the content after receiving notice from Plaintiff, who has substantial Florida interests

This active conduct directed toward generating revenue from Florida users and affecting Plaintiff's Florida interests establishes the purposeful direction required for specific jurisdiction.

    d)  <u>The "Stream of Commerce" Cases Support Jurisdiction</u>.

Meta's reliance on *Walden v. Fiore*, 571 U.S. 277 (2014), is misplaced. *Walden* involved conduct by a defendant that had no connection to the forum state beyond the plaintiff's presence there. There, the Court concluded that a Nevada federal district court could not assert personal jurisdiction over a law enforcement officer who seized cash from the plaintiffs at an airport in Georgia while they were traveling from Puerto Rico to Nevada. *Id*. at 279–80, 134 S.Ct. 1115. The Court reasoned that a finding of jurisdiction could not be predicated solely on the plaintiffs' connections to Nevada and the fact that they felt the effects of the delayed return of the funds while they were residing in Nevada. *Id*. at 289–90, 134 S.Ct. 1115. Under these circumstances,

7

the Court stated the defendant's connection to the forum was not purposeful but rather "random" and "fortuitous." *Id*. at 290–91, 134 S.Ct. 1115. Here, Meta's conduct was specifically designed to generate revenue from users nationwide, including Florida, and to affect Plaintiff's business interests, which include substantial Florida interests.

Other authorities cited by Meta support jurisdiction here because Meta's algorithmic promotion of content was specifically designed to reach and generate revenue from Florida users, creating the necessary connection between Meta's conduct and Florida.

B. **Venue is Proper in the Southern District of Florida.**

Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred in the Southern District of Florida. Meta's cited cases are factually distinguishable because they involved situations where no relevant conduct occurred in the forum district.

1. **Meta's Cases Involved No Forum-State Conduct.**

The case cited by Meta of *Trump v. Simon & Schuster, Inc.*, No. 23-cv-2333, 2023 WL 5000572 (N.D. Fla. Aug. 4, 2023), involved President Donald Trump's suit against journalist Bob Woodward for releasing recordings of interviews that he gave to the journalist in 2019 and 2020, claiming he never agreed to those tapes being shared with the public, claiming that although he had given Woodward consent to record their conversations "for the sole purpose of a book," that didn't extend to packaging those recordings as an audiobook. However, no events relating to the creation, editing, or distribution of the book occurred in Florida. Here, by contrast, Meta's promotional algorithms operated in Florida, Meta generated revenue from Florida users, and injury to Plaintiff's Florida business and personal interests occurred in this district.

8

Additionally, the case sited by Meta of *Lynch v. Bailey-Roka*, No. 22-cv-14338, 2023 WL 4144365 (S.D. Fla. June 23, 2023), similarly involved conduct that occurred entirely outside Florida. Here, the events giving rise to the claim include Meta's revenue generation from Florida users and injury to Plaintiff's Florida interests.

### 2. Substantial Events Occurred in Florida.

Under *Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1371-72 (11th Cir. 2003), also cited by Meta, courts must "focus on relevant activities of the defendant, not of the plaintiff." Here, Meta's relevant activities in Florida include:

1. **Algorithmic promotion of content to Florida users**: Meta's algorithms specifically targeted Florida users with the content containing Plaintiff's image to maximize engagement and advertising revenue.
2. **Revenue generation from Florida advertisers and users**: Meta monetized the content through targeted advertising to Florida users and data collection from Florida residents.
3. **Failure to remediate upon notice**: When Plaintiff (with substantial Florida interests) notified Meta of the unauthorized use, Meta's decision to maintain the content or ignore the notification constituted conduct affecting Florida interests.

### 3. Injury-Based Venue Cases Support Plaintiff's Arguments.

Meta ignores the well-established principle that venue can be proper where the plaintiff suffered injury. While *Jenkins Brick* requires focusing on defendant's conduct, which has been established, courts have consistently held that a defendant's conduct causing injury in the forum district can establish venue. Here, Meta's conduct directly caused injury to Plaintiff's Florida business interests and reputation.

**C.   Plaintiff States Valid Claims Against Meta**.

### 1. Plaintiff's Right of Publicity Claim is Adequately Plead.

9

Florida Statute § 540.08 prohibits the use of a person's name, portrait, photograph, or other likeness without consent "for purposes of trade or for any commercial or advertising purpose." Meta's cited cases are factually distinguishable because they involved passive publication rather than active commercial exploitation.

2. **The "Direct Promotion" Cases Cited by Meta Are Clearly Distinguishable.**

Meta relies on *Lane v. MRA Holdings, LLC*, 242 F. Supp. 2d 1205 (M.D. Fla. 2002), and *Tyne v. Time Warner Ent. Co.*, 901 So.2d 802 (Fla. 2005), for the proposition that § 540.08 requires "direct promotion" of a product or service. These cases are distinguishable because they involved editorial content, or expressive work, not commercial exploitation through advertising algorithms. Here, by contrast, Meta used Plaintiff's image as part of its commercial engagement and advertising algorithms, **effectively making Plaintiff's image part of Meta's advertising strategy to drive user engagement and to generate advertising revenue through targeted advertising systems**.

3. **Meta's Cases Involving Broadcast Media Are Similarly Inapplicable.**

*Fuentes v. Mega Media Holdings, Inc.*, 721 F. Supp. 2d 1255 (S.D. Fla. 2010), a case cited by Meta, involved a television broadcast where the plaintiff's image was incidentally included in news coverage. This is entirely different and of no precedential value from Meta's algorithmic promotion of content containing Plaintiff's image to maximize commercial value.

Other authorities cited by Meta involved publications made "for the purpose of ruining [plaintiff's] reputation" rather than commercial exploitation, and another case found no § 540.08 violation where an article using plaintiff's photograph was not "commercial speech." Here,

10

Meta's purpose was commercial - to generate user engagement and advertising revenue through Plaintiff's image.

### 4. Meta's Active Commercial Exploitation Distinguishes The Subject Case.

Unlike the passive publication in Meta's cited cases, here Meta:

- **Used algorithmic systems to promote content**: Meta's algorithms identified Plaintiff's image as likely to generate engagement and promoted it to maximize advertising revenue and user data collection (Compl. ¶¶ 16-17, 41).

- **Monetized through targeted advertising**: Meta generated revenue by showing targeted advertisements to users who viewed content containing Plaintiff's image (Id. ¶¶ 17, 41).

- **Harvested valuable user data**: Meta collected behavioral data from users' interactions with Plaintiff's image, which Meta uses for commercial purposes (Id. ¶ 17).

- **Featured content to promote platform engagement**: By algorithmically promoting the controversial content containing Plaintiff's image, Meta used Plaintiff's likeness to maintain user engagement and promote its platform (Id. ¶¶ 40-41).

This active commercial exploitation falls squarely within § 540.08's prohibition on commercial use without consent.

### D. **Plaintiff is Entitled to Seek Injunctive Relief.**

#### 1. Meta's Cited Authorities Involved Different, Unrelated Procedural Contexts.

*Alabama v. U.S. Army Corps of Eng'rs*, 424 F.3d 1117 (11th Cir. 2005), involved a request for injunctive relief without any underlying cause of action. Here, Plaintiff seeks injunctive relief as a remedy for statutory violations under § 540.08, not as a standalone claim.

Other cases cited by Meta (*Florida Beauty Flora Inc. v. Pro Intermodal L.L.C.*, *Lima v. Intermarine Invs., LLC*, *Pro. Plaza Condo Ass'n, Inc. v. Landmark Infrastructure Holding Co.*, *Blue Water Innovations, LLC v. Fettig*) generally involved situations where plaintiffs failed to

state any viable underlying claim. Here, Plaintiff has stated a viable § 540.08 claim, making injunctive relief an appropriate remedy.

### 2. Ongoing Violations Justify Injunctive Relief.

The Complaint alleges that Meta continues to host and promote the unauthorized content despite receiving notice (Compl. ¶ 18). This ongoing violation distinguishes the case from those Meta cited authorities tp the contrary, which involved completed harms rather than continuing violations.

Injunctive relief is particularly appropriate for right of publicity violations because monetary damages cannot adequately address ongoing reputational harm and continued unauthorized commercial exploitation of one's identity.

### E.     Section 230 Does Not Bar Plaintiff's Claims.

Meta's Section 230 argument fails for multiple independent reasons. The cases Meta cites are factually distinguishable because they involve passive hosting rather than the active promotion and monetization alleged here.

### 1. Meta Acted as More Than a Passive Host.

The cited case by Meta of *Klayman v. Zuckerberg*, 753 F.3d 1354 (D.C. Cir. 2014), involved Facebook's "allowing" certain pages to exist, which is passive conduct. Here, Meta went beyond allowing content to exist by actively promoting it through algorithms designed to maximize engagement and revenue. Further, *Cohen v. Facebook, Inc.*, 252 F. Supp. 3d 140 (E.D.N.Y. 2017), and *Force v. Facebook, Inc.*, 934 F.3d 53 (2d Cir. 2019), involved editorial decisions about whether to remove content, not algorithmic promotion for commercial gain. The

*Force* court's statement about "arranging and distributing" content supports Plaintiff's position that Meta's algorithmic promotion exceeds passive hosting. Further, *Dowbenko v. Google Inc.*, 582 Fed. App'x 801 (11th Cir. 2014), involved Google's passive display of search results, not active promotion of specific content for commercial exploitation. Here, Meta's algorithms specifically identified and promoted Plaintiff's image to maximize user engagement and advertising revenue.

    2.  **The Platform Immunity Cases Cited Involved Different Conduct**.

*Medytox Sols., Inc. v. Investorshub.com, Inc.*, 152 So. 3d 727 (Fla. 4th DCA 2014), involved a website that merely hosted user comments without active promotion. Here, Meta used sophisticated algorithms to promote content containing Plaintiff's image to drive commercial engagement.

The *Roca Labs, Inc. v. Consumer Op. Corp.*, 140 F. Supp. 3d 1311 (M.D. Fla. 2015), case involved passive hosting of user reviews. Here, Meta actively developed and promoted content through algorithmic systems designed for commercial exploitation.

The *Mezey v. Twitter, Inc.*, No. 18-cv-21069, 2018 WL 5306769 (S.D. Fla. July 19, 2018), case found that Twitter merely "displayed, organized, and hosted" content. Here, Meta went beyond organization and hosting by actively promoting specific content to maximize commercial value.

    3.  **The Right of Publicity Claim Falls Within the Intellectual Property Exception.**

Florida Law recognizes right of publicity as "Property-Like". As Meta acknowledges, *Gannett Co. v. Anderson*, 947 So. 2d 1 (Fla. Dist. Ct. App. 2006), characterizes Florida's right of

publicity as a privacy tort. However, this characterization does not preclude intellectual property treatment. Right of publicity protects property-like commercial interests in personal identity that are analogous to trademark rights. The commercial nature of the right protected by § 540.08 - the exclusive right to control commercial use of one's identity - aligns with intellectual property principles rather than traditional privacy torts focused on emotional harm.

### 4. Meta's Active Role in Content Development Defeats Section 230 Immunity.

Meta cites *Dyroff v. Ultimate Software Group, Inc.*, 934 F.3d 1093 (9th Cir. 2019), and *Doe (K.B.) v. Backpage.com, LLC*, 724 F. Supp. 3d 882 (N.D. Cal. 2024), for the proposition that algorithmic features constitute protected editorial functions. These cases are distinguishable because they involved neutral algorithmic features, not algorithmic systems specifically designed to identify and promote controversial content for commercial gain.

Here, as alleged in the Complaint, Meta's algorithms did not merely organize content neutrally. They specifically identified content containing Plaintiff's image as likely to generate controversy and engagement, then promoted it to maximize advertising revenue and user data collection. This active development and promotion of specific content for commercial exploitation exceeds the neutral editorial functions protected in *Dyroff* and similar cases.

The distinction between passive hosting and active development is critically important. Meta's algorithmic promotion of content containing Plaintiff's image, combined with its monetization through targeted advertising and data collection, constitutes active development of content rather than passive hosting.

*Caraccioli v. Facebook, Inc.*, 700 Fed. App'x 588 (9th Cir. 2017), and *Cross v. Facebook, Inc.*, 14 Cal. App. 5th 190 (2017), cases also cited by Meta, involved passive hosting of user content without allegations of active commercial exploitation. Here, Meta specifically used Plaintiff's image as part of its commercial advertising and engagement strategies.

*Ripple Labs Inc. v. YouTube LLC*, No. 20-cv-02747, 2020 WL 6822891 (N.D. Cal. Nov. 20, 2020), found Section 230 immunity where YouTube was not "responsible, in whole or in part" for content creation, but here, Meta became responsible for content development by algorithmically promoting and monetizing specific content containing Plaintiff's image.

*Czyz v. Zuckerberg*, No. 502024CA000996XXXAMB (Fla. Cir. Ct., 15th Jud. Cir., Mar. 21, 2025), which Meta cites referencing an "Order Granting Defendants' Motion to Dismiss (finding Section 230 barred defamation claim seeking to hold Meta liable as "publishers" of "articles containing the allegedly defamatory statements and the URLS/hyperlinks to that content")", involved different factual allegations surrounding claims of libel and slander, and, among other matters, did not address the specific issues of algorithmic promotion for commercial exploitation present here. As noted in that decision, "*Similarly, the advertisements or web links within the blog article discussed by Plaintiff's response and at the hearings are not defamatory, namely because they are not regarding Plaintiff.*" Moreover, even if it were helpful to Meta's arguments, the Florida Circuit Court's decision in *Czyz* does not establish binding precedent on the federal Section 230 issues presented here, and the factual distinctions make that decision inapplicable to Plaintiff's claims.

## IV.   CONCLUSION

Meta cites no authority that reaches into the facts of this case where an individual's name, identity, and privately commissioned photographs (that, not incidentally, have been illegally copied from another source and then digitally altered), are allowed, without that individual's consent, to be posted in an online Facebook "group" and therein disseminated in a defamatory and humiliating context allowing anonymous and other members whom the individual does not know, to indiscriminately comment on and join in the humiliation fracas, thereby exploiting and monetizing the individual's name, likeness and image through sophisticated algorithms and engagement strategies, notwithstanding that individual's written objection in the form of a takedown notification.

For the foregoing reasons, Meta's Motion to Dismiss should be denied in its entirety. Plaintiff has adequately alleged facts establishing personal jurisdiction over Meta and proper venue in the Southern District of Florida. The Complaint states valid claims for violation of Florida's right of publicity statute and entitlement to injunctive relief. Section 230 does not bar Plaintiff's claims because Meta actively participated in promoting and monetizing the unauthorized content rather than serving as a passive host, and failed to remove the unauthorized content despite receiving notice from Plaintiff.

Dated September 23, 2025.

                                        Respectfully submitted by:

                                        MCRAE LAW OFFICES, P.A.
Attorney for Plaintiff,
SHAWN SILVER
5300 West Atlantic Avenue, Suite 412
Delray Beach, FL 33484
(561) 638-6600
(888) 308-6020 fax

                s/ Mitchell T. McRae
By: _____
      Mitchell T. McRae, Esq.
      mmcrae@mcraelawfirm.com
      FBN 441759

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this September 23, 2025, I electronically filed the foregoing with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF. I further certify that the aforementioned document is being served on the Defendants SPILL THE TEA, INC. and AWDTSG, INC. via U.S. Mail at the addresses specified in the attached Service List.

                                        /s/ *Mitchell T. McRae*
                                        Attorney

## SERVICE LIST:

SHAWN SILVER vs. SPILL THE TEA, INC., a Delaware corporation, AWDTSG, Inc., a Delaware corporation, TRANSGLOBAL ASSETS INC., a Wyoming corporation, jointly and severally d/b/a DATEGUARD ARE WE DATING THE SAME GUY? - NASHVILLE, and META PLATFORMS, INC., a Delaware corporation

United States District Court Southern District of Florida

Case No. 0:25-cv-61308-KMM

**SPILL THE TEA, INC.**

**REGISTERED AGENT:**

Harvard Business Services, Inc.
16192 Coastal Hwy
Lewes, Delaware 19958

**VIA U.S. MAIL**

**AWDTSG, INC**.

**REGISTERED AGENT:**

Legalinc Corporate Services Inc.
131 Continental Drive Suite 305
Newark, Delaware 19713

**VIA U.S. MAIL**