UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**CASE NO. 25-CV-61308-MOORE/STRAUSS**

**SHAWN SILVER,**

    Plaintiff,
v.

**SPILL THE TEA, INC.**, *et al.*,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

THIS MATTER came before the Court upon Plaintiff's Motion for Entry of Default Final Judgment Against Defendants Spill The Tea, Inc. and AWDTSG, Inc. ("Motion") [DE 31]. This case has been referred to me, pursuant to 28 U.S.C. § 636 and the Magistrate Judge Rules of the Local Rules of the Southern District of Florida, to take all necessary and proper action as required by law with respect to the Motion [DE 44]. I have reviewed the Motion and all other pertinent portions of the record. For the reasons discussed herein, I respectfully **RECOMMEND** that the Motion [DE 31] be **DENIED**.

## BACKGROUND

Plaintiff purchased professional photographs to use for his private dating profile. Complaint [DE 1] ¶ 11. Without Plaintiff's knowledge or consent, Defendants, Spill The Tea, Inc. and AWDTSG, Inc. (the "Dateguard Defendants"), copied Plaintiff's private photographs, used artificial intelligence to make minor alterations, and republished the photographs in a Facebook group (named Dateguard Are We Dating the Same Guy – Nashville) that the Dateguard Defendants operate. *See id.* ¶¶ 5, 6, 12, 14. When the Dateguard Defendants republished the photographs in the Facebook group, they included Plaintiff's first name with the photographs. *Id.* ¶¶ 10, 13.

Plaintiff alleges that the posts with his first name and photographs "were presented alongside disparaging and inflammatory content, implicitly associating him with negative characterizations." *Id.* ¶ 13. He also alleges that the Facebook group "is specifically designed to allow anonymous commentary, personal accusations, and photographs of individuals purportedly involved in 'shady' conduct." *Id.* ¶ 14.

Consequently, Plaintiff initiated this action against the Dateguard Defendants, naming them as defendants in all counts of the Complaint other than Count V.[1] He asserts claims against them for statutory misappropriation of name or likeness (Count I), common law misappropriation (Count II), public disclosure of private facts (Count III), and intentional infliction of emotional distress (Count IV). Plaintiff also seeks injunctive relief against all Defendants (Count VI). On August 12, 2025, the Clerk entered a default against both of the Dateguard Defendants [DE 25, 26], as they failed to file a response to the Complaint, and the deadline to do so had passed. Pursuant to the instant Motion, Plaintiff now seeks the entry of a default final judgment granting permanent injunctive relief against the Dateguard Defendants. As of the entry of this Report, neither of the Dateguard Defendants have appeared in this action.

## LEGAL STANDARD

"[A] defaulted defendant is deemed to admit the plaintiff's well-pleaded allegations of fact." *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1245 (11th Cir. 2015) (quoting *Cotton v. Mass. Mut. Life Ins. Co.,* 402 F.3d 1267, 1278 (11th Cir. 2005)). However, "he is not held to admit facts that are not well-pleaded or to admit conclusions of law." *Id.* (quoting *Cotton*, 402 F.3d at 1278). Moreover, "a defendant's default does not in itself warrant the court in entering a

---

[1] Plaintiff also sued two other defendants in this action. He has voluntarily dismissed one of those defendants. *See* [DE 20, 21]. The second (Meta Platforms, Inc.) is still a defendant, but the instant Motion only seeks a default judgment against the Dateguard Defendants.

default judgment." *Nishimatsu Const. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). "Entry of default judgment is only warranted when there is 'a sufficient basis in the pleadings for the judgment entered.'" *Surtain*, 789 F.3d at 1245 (quoting *Nishimatsu Constr.*, 515 F.2d at 1206). This "sufficient basis" standard is "akin to that necessary to survive a motion to dismiss for failure to state a claim." *Id.* "Conceptually, then, a motion for default judgment is like a reverse motion to dismiss for failure to state a claim." *Id.*

At the pleading stage, a complaint must contain "a short and plain statement of the claim showing the [plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a). Although Rule 8(a) does not require "detailed factual allegations," it does require "more than labels and conclusions"; a "formulaic recitation of the cause of action will not do." *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 555 (2007). To survive a motion to dismiss, "factual allegations must be enough to raise a right to relief above the speculative level" and must be sufficient "to state a claim for relief that is plausible on its face." *Id.* at 555, 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss." *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1261 (11th Cir. 2009) (citing *Iqbal*, 556 U.S. at 679)).

In considering a Rule 12(b)(6) motion to dismiss, the court's review is generally "limited to the four corners of the complaint." *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009) (quoting *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002)). Courts must accept the factual allegations in the complaint as true and view them in the light most favorable to the plaintiff. *Cambridge Christian Sch., Inc. v. Fla. High Sch. Athletic Ass'n, Inc.*, 942 F.3d 1215, 1229 (11th Cir. 2019); *Tims v. LGE Cmty. Credit Union*, 935 F.3d 1228, 1236

(11th Cir. 2019). But "[c]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Jackson v. Bellsouth Telecomms.*, 372 F.3d 1250, 1262-63 (11th Cir. 2004) (citation omitted); *see also Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

## ANALYSIS

Plaintiff is not entitled to a default judgment granting permanent injunctive relief against the Dateguard Defendants because the Complaint fails to state a claim upon which relief can be granted against the Dateguard Defendants. "[A]ny motion or suit for either a preliminary or permanent injunction must be based upon a cause of action." *Alabama v. U.S. Army Corps of Eng'rs*, 424 F.3d 1117, 1127 (11th Cir. 2005). "[A] plaintiff must be able to articulate a basis for relief that would withstand scrutiny under" Rule 12(b)(6) for injunctive relief "to be even theoretically available." *Id.* (quoting *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1097 (11th Cir. 2004)). "An injunction is a 'remedy potentially available only after a plaintiff can make a showing that some independent legal right is being infringed—if the plaintiff's rights have not been violated, he is not entitled to any relief, injunctive or otherwise.'" *Id.* (quoting *Klay*, 376 F.3d at 1098). In addition to establishing "actual success on the merits" of his claim, *KH Outdoor, LLC v. City of Trussville*, 458 F.3d 1261, 1268 (11th Cir. 2006), a plaintiff seeking permanent injunctive relief "must show (1) that he has suffered an irreparable injury; (2) that his remedies at law are inadequate; (3) that the balance of hardships weighs in his favor; and (4) that a permanent injunction would not disserve the public interest." *Young Israel of Tampa, Inc. v. Hillsborough Area Reg'l Transit Auth.*, 89 F.4th 1337, 1351 (11th Cir. 2024) (citing *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)).

Here, even though the well-pled factual allegations in the Complaint are deemed admitted, they do not establish actual success on the merits. In other words, the Complaint does not contain enough factual allegations to state a claim for relief that is plausible on its face. As an initial matter, it is unclear from the Motion whether Plaintiff's request for injunctive relief against the Dateguard Defendants is solely premised upon his statutory misappropriation claim (Count I) or whether it is also premised upon the claims Plaintiff brings in Counts II, III, and IV of the Complaint. That is because while the Motion references law related to Count I, it fails to discuss any law pertaining to Counts II, III and IV. Moreover, the Motion contains virtually no discussion of the claims Plaintiff raises in Counts II, III, and IV. At any rate, as discussed herein, Plaintiff fails to state a claim in Counts I-IV.

**A. Counts I & II**

The Complaint fails to state a claim for statutory or common law misappropriation. While different remedies may be available for the two claims, both causes of action require the same substantive elements.[2] Absent consent, section 540.08 of the Florida Statutes prohibits any person from "publish[ing], print[ing], display[ing] or otherwise publicly us[ing] for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of any

---

[2] *See Bialik v. Individuals, Bus. Entities, or Unincorporated Associations Identified on Schedule A.*, No. 22-CV-61142, 2022 WL 18956098, at *4 (S.D. Fla. Nov. 30, 2022) ("The analysis of liability for Florida common law right of publicity is the same as the analysis of liability for unauthorized use of likeness under Section 540.08 of the Florida Statutes." (citing *Love v. Jackson*, No. 15-CV-21446-WILLIAMS, 2015 WL 11237645, at *4 (S.D. Fla. Oct. 22, 2015))); *Taylor v. Trapeze Mgmt., LLC*, No. 0:17-CV-62262-KMM, 2019 WL 1468515, at *6 (S.D. Fla. Feb. 27, 2019) ("Under Florida law, the elements of common law invasion of privacy–commercial misappropriation of likeness coincide with the elements of unauthorized publication of name or likeness in violation of Fla. Stat. § 540.08." (quoting *Lane v. MRA Holdings, LLC*, 242 F. Supp. 2d 1205, 1220 (M.D. Fla. 2002))); *see also Almeida v. Amazon.com, Inc.*, 456 F.3d 1316, 1325 (11th Cir. 2006) ("The Florida legislature enacted section 540.08 in order to expand the remedies available under the common law right against misappropriation.").

natural person . . . ." § 540.08(1), Fla. Stat.; *see also Loft v. Fuller*, 408 So. 2d 619, 622 (Fla. 4th DCA 1981) ("Section 540.08 prohibits unauthorized publication of the name or likeness of any person, for trade, commercial or advertising purposes."). "[T]he purpose of section 540.08 is to prevent the use of a person's name or likeness to directly promote a product or service because of the way that the use associates the person's name or personality with something else." *Tyne v. Time Warner Ent. Co., L.P.*, 901 So. 2d 802, 808 (Fla. 2005) (citing *Loft*, 408 So. 2d at 622).

The requirement that a person's name or likeness be used for commercial, trade, or advertising purposes means that the person's name or likeness must be used "to directly promote the product or service of the publisher." *Loft*, 408 So. 2d at 622-23; *see also Almeida*, 456 F.3d at 1325 ("Courts have interpreted the statute's commercial purpose requirement to require that a defendant's unauthorized use 'directly promote' a product or service."). "[S]ection 540.08(1) does not apply to publications . . . which do not directly promote a product or service." *Tyne v. Time Warner Ent. Co., L.P.*, 425 F.3d 1363, 1364 (11th Cir. 2005) (quoting *Tyne*, 901 So. 2d at 810). Use of one's name or likeness "is not harmful simply because it is included in a publication sold for profit." *Valentine v. C.B.S., Inc.*, 698 F.2d 430, 433 (11th Cir. 1983); *see also Loft*, 408 So. 2d at 623 ("[T]he publication is harmful not simply because it is included in a publication that is sold for a profit, but rather because of the way it associates the individual's name or his personality with something else."). In other words, "the use of an image in a publication is not for a 'commercial purpose' under section 540.08 merely because the publication is offered for sale." *Almeida*, 456 F.3d at 1325. Moreover, courts have held that the "use of one's name, likeness, portrait, or photograph, whether in a news report, television show, play, novel, or the like is not actionable unless the individual's name or likeness is used to directly promote a commercial product or service, separate and apart from the publication." *Martin v. E.C. Publications, Inc.*, No.

6

1:19-CV-21167, 2022 WL 3154787, at *9 (S.D. Fla. Feb. 16, 2022), *report and recommendation adopted*, 2022 WL 4483136 (S.D. Fla. Sept. 27, 2022) (quoting *Fuentes v. Mega Media Holdings, Inc.*, 721 F. Supp. 2d 1255, 1258 (S.D. Fla. 2010)).

Here, the Complaint is devoid of well-pled factual allegations showing that the Dateguard Defendants published Plaintiff's photos *to directly promote any product or service*. While Plaintiff does allege that the Dateguard Defendants' use of Plaintiff's photo and first name "served a commercial or promotional purpose," [DE 1] ¶ 22, Plaintiff's allegation in this regard is conclusory. However, "[c]onclusory allegations are not entitled to the assumption of truth." *McCullough v. Finley*, 907 F.3d 1324, 1333 (11th Cir. 2018) (citing *Iqbal*, 556 U.S. at 679).

Although Plaintiff also alleges that the Dateguard Defendants "used his photograph and first name in an online publication for the purpose of increasing the visibility, engagement, and influence of [their] Facebook group," [DE 1] ¶ 21, the Complaint fails to contain any well-pled factual allegations to plausibly show that the Dateguard Defendants used Plaintiff's photo to directly promote the Facebook group. In other words, Plaintiff's allegation in paragraph 21 of the Complaint (and a similar allegation in paragraph 26 of the Complaint)[3] is a naked assertion devoid of further factual enhancement. Significantly, though, the plausibility "standard requires plaintiffs to provide more than 'naked assertions devoid of further factual enhancement,' mere 'labels and conclusions,' or 'a formulaic recitation of the elements of a cause of action.'" *Marquez v. Amazon.com, Inc.*, 69 F.4th 1262, 1269 (11th Cir. 2023) (quoting *Iqbal*, 556 U.S. at 678). Furthermore, even if Plaintiff had provided some factual enhancement, as indicated above, the commercial exploitation requirement contemplates use of one's name or likeness "to directly

---

[3] *See* [DE 1] ¶ 26 ("The DATEGUARD Defendants publicly displayed Plaintiff's image and first name for its own benefit, namely, to attract attention and generate engagement in the group.").

promote a commercial product or service, separate and apart from the publication." *Martin*, 2022 WL 3154787, at *9. The Complaint, however, contains no allegations (conclusory or otherwise) suggesting that the Dateguard Defendants used Plaintiff's photo to directly promote some product or service separate and apart from the Facebook group.

For the foregoing reasons, Plaintiff has failed to state a claim for statutory or commercial misappropriation in Counts I and II of the Complaint. Therefore, Plaintiff is not entitled to injunctive relief premised upon such claims.

**B. Counts III & IV**

Neither Count III nor Count IV states a claim, so Plaintiff is not entitled to a default judgment on those counts. In Count III, Plaintiff attempts to assert an invasion of privacy cause of action premised upon the Dateguard Defendants' alleged disclosure of private facts – i.e., the Dateguard Defendants' alleged "dissemination of truthful private information which a reasonable person would find objectionable." *Allstate Ins. Co. v. Ginsberg*, 863 So. 2d 156, 162 (Fla. 2003) (citation omitted). "[T]he common law tort of public disclosure of private facts . . . requires '1) the publication, 2) of private facts, 3) that are offensive, and 4) are not of public concern.'" *Cowans v. Maximus Educ. LLC*, 417 So. 3d 356, 357 (Fla. 4th DCA 2025) (quoting *Woodard v. Sunbeam Television Corp.*, 616 So. 2d 501, 503 (Fla. 3d DCA 1993)); *see also Regions Bank v. Kaplan*, No. 17-15478, 2021 WL 4852268, at *12 (11th Cir. Oct. 19, 2021). The matter publicized must be "of a kind that . . . would be highly offensive to a reasonable person." *Cape Publications, Inc. v. Hitchner*, 549 So. 2d 1374, 1377 (Fla. 1989). As discussed below, at a minimum, Count III does not establish the offensiveness element as a matter of law.

In Count IV, Plaintiff attempts to assert a claim for intentional infliction of emotional distress. To state such a claim, Plaintiff must plausibly allege that: "(1) the defendant's conduct

8

was intentional or reckless; (2) the conduct was outrageous, beyond all bounds of decency, and odious and utterly intolerable in a civilized community; (3) the conduct caused emotional distress; and (4) the emotional distress was severe." *Plowright v. Miami Dade Cnty.*, 102 F.4th 1358, 1367-68 (11th Cir. 2024) (quoting *Moore v. Pederson*, 806 F.3d 1036, 1053 (11th Cir. 2015)); *see also Deauville Hotel Mgmt., LLC v. Ward*, 219 So. 3d 949, 954-55 (Fla. 3d DCA 2017). "In Florida, 'whether conduct is outrageous enough to support a claim of intentional infliction of emotional distress is a question of law' to be decided by the courts at the earliest opportunity, 'not a question of fact' for the jury." *Plowright*, 102 F.4th at 1368 (quoting *Liberty Mut. Ins. Co. v. Steadman*, 968 So. 2d 592, 595 (Fla. 2d DCA 2007)) (alteration adopted).

"[F]or one's actions to rise to the level of intentional infliction of emotional distress, it must be 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Deauville*, 219 So. 3d at 955 (quoting *Clemente v. Horne*, 707 So.2d 865, 867 (Fla. 3d DCA 1998)). "[E]ven purposeful conduct that one knows is going to hurt another is not outrageous enough to support a claim." *Id.* It is not even "enough that the defendant has acted with . . . tortious or even criminal [intent], or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort." *Id.* (quoting *Gallogly v. Rodriguez*, 970 So. 2d 470, 471-72 (Fla. 2d DCA 2007)). "Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" *Steinmetz v. Pickholtz*, 414 So. 3d 309, 316 (Fla. 3d DCA 2025) (quoting Restatement (Second) of Torts § 46 cmt. d (Oct. 2024 ed.)). The "outrageousness test is objective." *Johns Hopkins All Children's Hosp., Inc. v. Kowalski*, 425 So. 3d 645, 663 (Fla. 2d DCA 2025)

(quoting *Mellette v. Trinity Mem'l Cemetery, Inc.*, 95 So. 3d 1043, 1049 (Fla. 2d DCA 2012)). "[T]he subjective response of the person who is the target of the actor's conduct does not control the question of whether the tort of intentional infliction of emotional distress occurred." *Id.* (quoting *Steadman*, 968 So. 2d at 595).

As noted above, Plaintiff's invasion of privacy claim based upon the public disclosure of private facts (Count III) requires that the private facts that are publicized be "of a kind that . . . would be highly offensive to a reasonable person." *Hitchner*, 549 So. 2d at 1377. "In determining the extent of the right of privacy, the standard by which the right is measured is based upon a concept of the person of reasonable sensibility; the hypersensitive individual will not be protected." *Cape Publications, Inc. v. Bridges*, 423 So. 2d 426, 427 (Fla. 5th DCA 1982). The "highly offensive" requirement is akin to the outrageousness requirement of Plaintiff's claim for intentional infliction of emotional distress. *See, e.g.*, *N.A.S. v. Morada-Haute Furniture Boutique LLC*, No. 20-24676-CIV, 2021 WL 7368588, at *4 (S.D. Fla. Dec. 20, 2021), *report and recommendation adopted*, 2022 WL 574388 (S.D. Fla. Feb. 25, 2022) ("The intrusion must also be highly offensive to the reasonable person. This requires a plaintiff to show that the defendant's conduct was 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" (internal citations omitted)); *Rebalko v. City of Coral Springs*, 552 F.Supp.3d 1285, 1333 (S.D. Fla. 2020) (stating that the "highly offensive to a reasonable person" prong requires a plaintiff to "plausibly allege that the intrusion 'is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency.'" (quoting *Watts v. City of Hollywood*, 146 F. Supp. 3d 1254, 1268 (S.D. Fla. 2015))); *Nygard v. Jasper*, No. 8:15-CV-1939-T-33EAJ, 2016 WL 9526666, at *4 (M.D. Fla. Jan. 4, 2016), *report and recommendation adopted*, 2016 WL

9526575 (M.D. Fla. Jan. 25, 2016) ("A claim for intrusion must allege the same kind of outrageous behavior as required for intentional infliction of emotional distress." (citing *Oppenheim v. I.C. Sys., Inc.*, 695 F. Supp. 2d 1303, 1308 (M.D. Fla. 2010))).

The Complaint fails to plausibly allege conduct that is objectively outrageous or highly offensive. Plaintiff's Complaint stems from the Dateguard Defendants' alleged surreptitious posting of professional photographs of Plaintiff that Plaintiff obtained for use in connection with a private dating profile. In Count III, Plaintiff alleges that "[r]epurposing the images, alongside his name and negative implications, in an open Facebook group constitutes a highly offensive disclosure of private facts." [DE 1] ¶ 31. In Count IV, Plaintiff alleges that "[t]he willful act of accessing private content, altering it via AI, publicly attaching Plaintiff's first name, and posting it in a hostile, shame-based Facebook group is outrageous conduct beyond all bounds of decency." *Id.* ¶ 34.

One of the major reasons the Complaint fails to state a claim is because it is very light on well-pled facts. For instance, Plaintiff's allegations in Counts III and IV regarding "negative implications," AI alterations, and a "hostile, shame-based Facebook group" are all labels and conclusions, not well-pled factual allegations. The general allegations of the Complaint likewise include several conclusory allegations. *See, e.g.*, *id.* ¶ 10 ("disseminated in a defamatory and humiliating context"); *id.* ¶ 12 ("used artificial intelligence to make minor alterations");[4] *id.* ¶ 13

---

[4] Plaintiff filed an affidavit [DE 32-1] with the Motion that contains some additional information not included in or attached to the Complaint. For instance, Plaintiff attached some of the photographs at issue to his affidavit. *See* [DE 32-2]. Additionally, Plaintiff states in his affidavit that the alleged minor alterations to his photos "result[ed] in certain distortions of [his] physical characteristics." *Id.* ¶ 6. Because the affidavit and attachments thereto were not included with the Complaint, they are not properly considered in connection with Plaintiff's Motion. *See Skonyon LLC v. Individuals, Partnerships & Unincorporated Associations Identified on Schedule "A"*, No. 23-61527-CV, 2024 WL 5264413, at *2 (S.D. Fla. June 4, 2024). At any rate, the limited additional information provided in the affidavit does not come close to changing the outcome here.

("disparaging and inflammatory content" and "negative characterizations"). Overall, Plaintiff's "allegations are indeed more conclusory than factual," so "the court does not have to assume their truth." *Newbauer v. Carnival Corp.*, 26 F.4th 931, 934 (11th Cir. 2022) (quoting *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012))).

And the limited factual allegations that are present essentially amount to the Dateguard Defendants publicly posting Plaintiff's *professional* photographs – which Plaintiff did not wish to make public beyond his private dating profile – without Plaintiff's consent. Presumably, the negative implication that Plaintiff refers to in the Complaint is that Plaintiff may be dating several people in the Nashville area given the name of the Facebook group (Dateguard Are We Dating the Same Guy – Nashville). However, the public posting of Plaintiff's private professional photographs and the alleged negative implication that is not expressly alleged, and the otherwise limited factual allegations in the Complaint are not nearly enough to lead an average member of the community to find the Dateguard Defendants' conduct outrageous or highly offensive. Thus, neither Count III nor Count IV states a claim for relief that is plausible on its face.

Moreover, with respect to Count III, it is unclear what private facts, if any, the Dateguard Defendants allegedly disclosed to the public beyond Plaintiff's professional photographs (alongside Plaintiff's name). While Plaintiff seems to also premise Count III on alleged negative implications, "[a]n invasion of privacy focuses on the *matter* being published, not its *context* or *inferences*." *Del Pino v. Bay of Pigs Veterans Ass'n*, No. 07-22869-CIV, 2008 WL 11411847, at *6 (S.D. Fla. Jan. 15, 2008) (citing *Heath v. Playboy Enterprises, Inc.*, 732 F. Supp. 1145, 1149 n.9 (S.D. Fla. 1990)). Additionally, Plaintiff's allegations in the Complaint regarding a defamatory

---

Moreover, the photos attached to the affidavit are not embarrassing photos. In other words, the photos further undermine the plausibility of Plaintiff's allegations that the Dateguard Defendants' posting of the photos was objectively outrageous or highly offensive.

context and alterations to the photos also undermine Count III, as "an essential element of the tort of public disclosure of private facts is that the facts at issue be true." *Harrington v. Veritext, LLC*, No. 24-CV-22787, 2025 WL 1591614, at *10 (S.D. Fla. May 1, 2025), *report and recommendation adopted*, 2025 WL 3282698 (S.D. Fla. Oct. 24, 2025) (quoting *Tyne ex rel. Tyne v. Time Warner Ent. Co., L.P.*, 204 F. Supp. 2d 1338, 1344 (M.D. Fla. 2002)).

For the foregoing reasons, Counts III and IV fail to state a claim. Therefore, Plaintiff is not entitled to injunctive relief premised upon the claims he asserts in those counts.

## CONCLUSION

For the reasons discussed above, I respectfully **RECOMMEND** that the Motion [DE 31] be **DENIED**.

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable K. Michael Moore, United States District Judge. Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1.

**DONE AND SUBMITTED** in Fort Lauderdale, Florida this 13th day of March 2026.

Jared M. Strauss
United States Magistrate Judge